IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ERIC DYNELL MCGADNEY, | * |
| | * |
|     Petitioner, | * |
| | *   CIVIL ACTION NO. 15-00282-WS-B |
| vs. | *   CRIMINAL NO. 12-00245-WS-B-1 |
| | * |
| UNITED STATES OF AMERICA, | * |
| | * |
|     Respondent. | * |

**REPORT AND RECOMMENDATION**

This matter is before the Court on Petitioner Eric Dynell McGadney's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. (Doc. 45). The motion, which was referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 8(b) of the rules Governing Section 2255 Cases, has been fully briefed and is now ready for consideration. In his motion, McGadney claims that his trial counsel, Christ Coumanis, was ineffective for failing to file a notice of appeal when requested to do so.[1] (Doc. 45). Based upon the evidence presented at the evidentiary

---

[1] Though McGadney raised two claims in his initial petition (doc. 45), the undersigned, in a report and recommendation filed on June 5, 2017, recommended that his claim that his trial counsel was ineffective for failing to investigate his prior convictions as predicates for his career offender status be denied as meritless. (Doc. 77). Thus, the instant report and recommendation is limited to the above claim.

hearing conducted on September 7, 2017, and upon consideration of McGadney's petition, the Government's response in opposition, the parties' supporting documents, and all other pertinent portions of the record, it is recommended that McGadney's claim that Coumanis failed to file a notice of appeal, as directed, be **DENIED**.

## I. BACKGROUND

A federal grand jury returned an indictment against McGadney in October 2012, and Christ Coumanis was appointed to represent him pursuant to the Criminal Justice Act (hereinafter "CJA"). (Docs. 1, 12). Pursuant to a plea agreement, McGadney entered a counseled guilty plea, and was convicted of possession with intent to distribute MDMA, in violation of 21 U.S.C. § 841(a)(1) (Count One); and use of an interstate facility to facilitate the commission of a drug trafficking felony, in violation of 21 U.S.C. § 843(b) (Count Two). (Doc. 22). On May 14, 2014, McGadney was sentenced to 188 months imprisonment, followed by a supervised release term of six (6) years. (Doc. 39).

Proceeding *pro se*, McGadney timely filed the instant petition on May 18, 2015.[2] (Doc. 45). McGadney seeks to

---

[2] At McGadney's request, his habeas petition was held in abeyance from June 16, 2016, through March 7, 2017, due to an impending Supreme Court decision that has no bearing on the instant issue before the Court. (Docs. 63, 71).

2

have his conviction and sentence set aside on the basis of ineffective assistance of counsel. (Id.). Along with his petition, McGadney submitted a supporting memorandum with attachments, where he specifically argued that his trial counsel, Coumanis, was ineffective for "failing to file a notice of appeal challenging the career offender application when [McGadney] specifically and unequivocally requested his counsel to do so." (Doc. 45-1 at 15). In the memorandum, McGadney asserts that:

> The petitioner . . . requested his counsel to file an appeal. Counsel initially advised the petitioner that an appeal would be frivolous; however the petitioner being adamant about exercising his right to appeal, counsel advised the petitioner that he would file said notice of appeal. The petitioner discovered several months past that counsel did not file said notice of appeal, and thus, the petitioner files the instant action.

(Id. at 16.). In his initial petition, McGadney also included a signed affidavit, where he contended that he had his "significant other to call [his] counsel to see if [his counsel] had filed [McGadney's] appeal." (Id. at 32).

In the Government's response in opposition to McGadney's petition, the Government argues that Coumanis never received an instruction to file an appeal. (Doc. 50 at 10). However, in his signed affidavit accompanying the response, Coumanis avers that McGadney initially wanted to

3

consider an appeal, but ultimately decided against pursuing the appellate process and instead sought to become a cooperating witness for the Government in an effort to obtain sentencing relief under Rule 35 of the Federal Rules of Criminal Procedure. (Doc. 50-1 at 3, 4). The Government acknowledged that an evidentiary hearing was necessary to resolve the conflicting statements made by McGadney and Coumanis. (Id. at 10, 11).

Upon review of McGadney's petition (doc. 45), the Government's response in opposition (doc. 50), and McGadney's reply (doc. 56), the undersigned determined that an evidentiary hearing was required to resolve McGadney's contention that Coumanis failed to file a notice of appeal as directed. (Doc. 77). An evidentiary hearing was scheduled for September 7, 2017, and counsel was appointed to represent McGadney at the hearing. (Docs. 81, 83). At the hearing, testimony was offered by McGadney; Christ Coumanis, his former counsel; Kimberly Busby, his former girlfriend; and Felicia Peoples Dorsey, a family friend.

## II. STANDARDS OF REVIEW

The Sixth Amendment guarantees criminal defendants a right to reasonably effective legal assistance. Roe v. Flores-Ortega, 528 U.S. 470, 476, 120 S.Ct. 1029, 145 L. Ed. 2d 985 (2000). To prove ineffective assistance of

4

counsel, petitioners must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L. Ed. 2d 674 (1984), which requires a petitioner to show (1) "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[,]" meaning that counsel's representation fell below an objective standard of reasonableness, id. at 687-88; and (2) that counsel's deficient performance prejudiced the petitioner by demonstrating a "reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." Id. at 694.

It is well-settled that "a lawyer who disregards instructions from his client to appeal has acted in a manner that is professionally unreasonable." Gomez-Diaz v. United States, 433 F.3d 788, 790 (11th Cir. 2005). If an attorney fails to file an appeal that his client wants filed, prejudice is presumed. Id. at 792. Accordingly, to satisfy the prejudice prong of the Strickland test, a defendant who shows that his attorney has ignored his wishes and failed to appeal his case need only demonstrate that, but for the attorney's deficient performance, he would have appealed. Id. Moreover, when counsel fails to file a requested appeal, "a defendant is entitled to [a

5

new] appeal without showing that his appeal would likely have had merit." Flores-Ortega, 528 U.S. at 477 (internal quotes omitted).

Even where a client has not made a specific appeal request, the Supreme Court has held that:

> [C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want an appeal (for example, because there are nonfrivolous grounds for appeal) or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.  In making this determination, courts must take into account all the information counsel knew or should have known.

Flores-Ortega, 528 U.S. at 480.

### III. DISCUSSION

At the evidentiary hearing conducted on September 7, 2017, McGadney testified that immediately after his sentencing, while still in the courtroom, he told Coumanis that he wanted to appeal his sentence.  McGadney felt that he had gotten a "raw deal" because he was improperly sentenced as a career offender.  According to McGadney, approximately one week after his sentencing, he used a prepaid card to telephone Coumanis, from the Baldwin County jail, and reiterate to him that he wanted to file an appeal.  McGadney testified that Coumanis told him that he would file the appeal.  McGadney further testified that

6

within the same week, Busby visited him at the local county jail, and he told her to speak to Coumanis about appealing his sentence. Additionally, McGadney testified that once he was moved to a facility in Perry County, the guard allowed him to make a phone call, and he called Busby and again asked her to speak with Coumanis about his appeal. McGadney also testified that he figured no appeal had been filed when Busby reported to him that Coumanis was no longer answering her phone calls or returning her phone messages. He further testified that he wrote the Court and requested a docket sheet in June 2014 and learned that no appeal had been filed. As a result, he had someone in the law library at FCI Pollock help him prepare the instant petition.

On cross-examination, McGadney provided conflicting information about his efforts to cooperate with the Government. At one point, McGadney acknowledged that both before and after his sentencing, there were efforts to cooperate. Later, McGadney testified that while he exchanged at least three emails with Coumanis after his sentencing, he was only asking about his appeal, not about cooperation. According to McGadney, Coumanis was raising the issue of cooperation; however, he was finished with trying to cooperate, and only wanted to know about his

7

appeal at that point.

Busby and Felicia Peoples Dorsey, McGadney's family friend, both testified that immediately following McGadney's sentencing, they spoke with Coumanis in the Court hallway, and he stated that he would be appealing the sentence. Dorsey further testified that she was not privy to any other discussions with Coumanis concerning the appeal. Busby testified that approximately two weeks after McGadney was sentenced, McGadney called her and told her to call Coumanis about the appeal. According to Busby, she called Coumanis to discuss McGadney's appeal, and he told her that an appeal had been filed. Then, two to three weeks after her initial call, she spoke with Coumanis a second time and was told that the appeal was being processed. Busby testified that she attempted to reach Coumanis on other occasions after that, but he never answered her telephone calls nor did he return her telephone message. Busby further testified that she began to believe that Coumanis had not filed an appeal after he stopped answering her phone calls and did not return her messages. Aside from attempting to reach Coumanis by telephone, Busby testified that she did not take any other steps to determine if he had filed the appeal.

Christ Coumanis testified that he has practiced

criminal law since 1988 and has represented between 125 and 150 criminal defendants in federal court since 2005. He further testified that he is aware of his obligation to file an appeal when a client requests it, even if he believes it has no merit. He also testified that filing an appeal is not a difficult task and can be accomplished in a matter of minutes.

Coumanis testified that while reviewing the plea agreement, he had general discussions with McGadney about the pros and cons of an appeal, and that at the sentencing, they were disappointed with the sentence McGadney received because McGadney had attempted to cooperate in order to obtain a sentencing reduction. Coumanis further testified that, at sentencing, McGadney told him that he wanted to appeal, and that he told him he understood. Coumanis also acknowledged that he spoke with McGadney's family immediately after the sentencing, and that they told him they wanted him to appeal. According to Coumanis, he told the family that there may not be many issues to appeal, but that he would do whatever he could to try to help McGadney.

Coumanis testified that he was preparing to file an appeal on McGadney's behalf; however, on May 21, 2014, McGadney left him a voice message stating that he no longer wanted to appeal. Coumanis also testified that, because

9

McGadney was incarcerated at the time, he was under the impression that McGadney could not have called directly from the jail, and left him a message; thus, he assumed that McGadney had Busby or some family member place a three-way phone call for him.[3] Coumanis testified that he called Busby the next day, May 22, 2014, and confirmed that McGadney did not wish to pursue the appeal, but instead wanted to try cooperating again. Coumanis testified that he then focused his efforts on trying to facilitate McGadney's cooperation. He also testified that, for up to six months after that, he was attempting to facilitate cooperation in hopes that it would eventually lead to a sentence reduction for McGadney. According to Coumanis, he and McGadney communicated via Corrilinks, the Bureau of Prisons email system, about information that McGadney wanted him to relay to the case agent.

The undersigned has carefully weighed the evidence received at the evidentiary hearing in light of all the facts, and has taken into account the consistencies and inconsistencies in the witnesses' testimony, and their demeanor on the stand. Based on said review, the undersigned credits Coumanis' testimony that while McGadney

---

[3] However at the evidentiary hearing, McGadney testified that while at the Baldwin County facility, he had access to a prepaid calling card; thus, he was able to place telephone calls from that facility.

10

and his family initially expressed a desire to appeal, McGadney later instructed him, via voice message, not to pursue the appeal, and that Busby, through whom McGadney often used to communicate with Coumanis, confirmed such.[4]

First, the Court finds that McGadney's testimony about directing Coumanis to file an appeal was not entirely credible.  While both McGadney and Coumanis agree that McGadney and his family initially instructed Coumanis to file an appeal, Coumanis' billing records, generated in close proximity to the events, support Coumanis' testimony that McGadney left him a telephone message on May 21, 2014, advising him that he did not want to appeal, and that he spoke with Busby, McGadney's then fiancée, the next day to confirm and discuss cooperation efforts.  Further, if, as McGadney alleges, he had personally telephoned Coumanis *after* the sentencing and told him to proceed with the appeal, McGadney's testimony that he also instructed Busby, both in person and over the telephone, to contact Coumanis and tell him to file the appeal makes no sense since he had purportedly already personally given Coumanis this very instruction on two separate occasions.

Additionally, the emails Coumanis produced at the

---

[4] Coumanis' billing records document several telephone conferences between Coumanis and McGadney's fiancée during his representation of McGadney. The last documented conversation was on May 22, 2014.

11

hearing also support his testimony that McGadney decided against the appeal, and wanted to pursue cooperation instead. The emails, which are dated beginning May 27, 2014, and go through October 16, 2014, are consistent with Coumanis' testimony and his billing records. They document Coumanis' efforts to facilitate McGadney's cooperation after sentencing whereas, as noted *supra*, McGadney provided conflicting testimony about efforts to cooperate after his sentencing. The emails strongly suggest that after sentencing, McGadney was continuing to provide information to Coumanis, who, in turn, was relaying it to the case agent in order to facilitate cooperation.[5]

Finally, while Busby testified that she spoke with Coumanis on several occasions about McGadney's appeal, her testimony was not credible. Her testimony was not consistent with either McGadney's or Coumanis' testimony. McGadney testified that the same week of his sentencing, Busby visited him at the local jail, and he instructed her to contact Coumanis and tell him to file an appeal on his behalf, whereas Busby testified that two weeks *after* McGadney's sentencing, McGadney called her and told her to call Coumanis and tell him to file an appeal. Busby's

---

[5] Indeed, it seems contrary to logic that a defendant would be permitted to cooperate with the Government in order to seek a sentence reduction, while simultaneously attacking his sentence on appeal.

12

testimony also conflicts with Coumanis' testimony and with his billing records which document the telephone message from McGadney on May 21, 2014, and Coumanis' discussion with Busby on May 22, 2014 confirming that McGadney wanted to forgo the appeal, and attempt cooperation.

Accordingly, based on the record evidence, including the witnesses' testimony, Coumanis' billing records and emails, the undersigned finds that Coumanis' testimony that while McGadney initially expressed an interest in appealing his sentence, he later directed Coumanis to not pursue the appeal, was credible. Accordingly, McGadney's claim that Coumanis failed to file a petition as directed is due to be **DENIED**. It is so recommended. See Gomez-Diaz, 433 F.3d at 792-93; Flores-Ortega, 528 U.S. at 577-580.

## IV. CERTIFICATE OF APPEALABILITY

PURUSANT TO RULE 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability be **DENIED**. 28 U.S.C. § 2255, Rule 11(a) ("[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear than an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28

13

U.S.C. § 2253(c)(1). A certificate of appealability may be issued only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Where a habeas petition is being denied on procedural grounds without reaching the merits of an underlying constitutional claim, "a COA" should be issued [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604, 146 L. Ed. 542 (2000). Where a habeas petition is being denied on the merits of an underlying constitutional claim, a certificate of appealability should be issued only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under Barefoot [v. Estelle, 463 U.S. 880, 893, 103 S. Ct. 3383, 3394 77 L. Ed. 2d 1090 (1983)], includes a showing that reasonable jurists could debate whether (or,

for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (internal quotations marks omitted); *accord* Miller El v. Cockrell, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003).

McGadney's petition does not warrant the issuance of a certificate of appealability, as reasonable jurists could not conclude either that this Court is in error in dismissing the instant petition or that Petitioner should be allowed to proceed further. Accordingly, the undersigned recommends that the Court conclude that reasonable jurists could not find it debatable whether McGadney's petition should be dismissed and, as a result, he is not entitled to a certificate of appealability.

**V. CONCLUSION**

For the foregoing reasons, it is recommended that McGadney's Motion to Vacate, Set Aside, or Correct Sentence (doc. 45) be **DENIED**, that this action be dismissed, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner, Eric Dynell McGadney. The undersigned Magistrate Judge further opines that McGadney is not entitled to the issuance of a Certificate of Appealability, and, as a result, he should

15

not be permitted to appeal *in forma pauperis*.

**Notice of Right to File Objections**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See U.S.C. § 636(b)(1); **Fed. R. Civ. P.** 72(b); S.D. ALA GenLR 72(c). The parties should note that, under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice. *11th Cir. R. 3-1*.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation

where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this **2nd** day of **April, 2018.**

                                              **/s/ SONJA F. BIVINS**
                                   **UNITED STATES MAGISTRATE JUDGE**